[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter comes before the court on a complaint seeking dissolution of the marriage of the parties and other relief. The matter originated in the Danbury Judicial District. After the trial commenced, the parties reached agreement on child custody, access, and health insurance. The parties signed a written stipulation concerning these issues, subject to the approval of the court. This stipulation was approved by the court (Gilardi, J.) on July 16, 2001 and will be incorporated by reference as part of the judgment. The trial continued on financial issues including child support, alimony, assignment of debts and assets, and counsel fees. The court has carefully considered the statutory criteria applicable to the issues in this case. The court makes the following findings of fact and issues the following orders.
The court has jurisdiction over this matter. One party has lived in this state for more than one year prior to the bringing of this action. The parties were married on September 7, 1985 in Ridgefield, Connecticut. The following minor children have been born to the wife, who are lawful children of this marriage: David Joseph Vecchia, born June 6, 1986 and Kathleen Mary Vecchia, born December 6, 1988. No other minor children have been born to the wife since the date of the marriage. The parties have not been the recipients of state assistance.
The marriage unraveled in 1997 and 1998 as a result of Mr. Vecchia's increasingly strange behavior. Although he had always been moody and distant, these qualities became more extreme. He stayed in his room for long periods of time without interacting with the family. He began to stay out late at night without notice to his wife. He would sometimes return in an inebriated condition and would say cruel and hurtful things to his wife and children. He developed a bizarre fixation with a female co-worker. He stalked her after work and ended up taking her briefcase from her car without permission. Later, he was arrested for subsequent incidents of stalking this woman. Ms. Vecchia tried hard to save the marriage but eventually decided that it was hopeless. The evidence is overwhelming that the marriage has broken down irretrievably with no hope CT Page 11898 of reconciliation and that the primary cause for this breakdown was the behavior of Mr. Vecchia. Fault is one factor to be considered by the court in determining alimony and the division of assets. While alimony, in whatever form, or an assignment of property is not considered either as a reward for virtue or as a punishment for wrongdoing, a spouse whose conduct has contributed substantially to the breakdown of the marriage should not expect to receive financial kudos for his or her misconduct. Moreover, in considering the gravity of such misconduct it is entirely proper for the court to assess the impact of the errant spouse's conduct towards the other spouse. Robinson v. Robinson, 187 Conn. 70, 72 (1982). However, fault is only one factor to be considered and cannot be given precedence over any other enumerated factor. Sands v. Sands, 188 Conn. 98,102 (1982).
Ms. Vecchia is 51 years of age. This is her third marriage. She is a cancer survivor and is now in good general health. She lives with the children in the marital home in West Redding. She has an associates degree in fashion merchandising from the University of Bridgeport which she earned before the marriage. She had about $10,000 in savings at the time of the marriage. She was the primary caretaker for the children and was not employed outside the home for most of the marriage. She has recently obtained full-time employment as an aid in the local elementary school for the upcoming school year. She will receive net earnings of $214 per week and will receive health insurance at a modest cost. She does not have any marketable skills at the moment other than a demonstrated ability to work with young children and an ability in marketing which would need updating in order to be pursued.
Mr. Vecchia is 55 years of age and in good general health. This is his first marriage. He has a bachelors degree from Notre Dame and a masters degree in business administration from the University of Connecticut. He lives with his mother in her home. He claimed to pay $250 per week in cash to his mother as rent but there was insufficient evidence to prove this fact. He has been continuously employed throughout the marriage. He had about $90,000 in savings at the time of the marriage. Since 1993 he has worked as the Purchasing Manager for the City of Stamford. He has gross earnings of $1,702.50 per week. Mr. Vecchia's vocational skills, employability and opportunity for future acquisition of assets and income are substantially greater than Ms. Vecchia's.
The parties own a residence at 600 Redding Road, West Redding, Connecticut. The land was given to them by Ms. Vecchia's father in 1986. It was worth about $183,000. In January 1989, the parties completed construction of the house at a cost of $175,400 plus extras and closing fees of about $15,000. The construction costs were paid with a mortgage for $135,000 and from savings, the majority of which had been accumulated CT Page 11899 by Mr. Vecchia prior to the marriage. The land had a value of about $200,000 at the time of the construction of the house. The house is a two-story colonial style with four bedrooms. Most of the house was built in a factory and shipped to the site, i.e. a modular home. The value of the house is found to be $460,000.
It would be in the best interests of the children if they are permitted to live in the house with their mother. Their grandfather lives next door and they are close to their schools and friends. The balance due on the mortgage is $109,000. There is an equity line of credit encumbering the property with a balance of $4,600. This balance was incurred by Mr. Vecchia for various things at least some of which were solely for his benefit. It is fair and equitable that Ms. Vecchia receive title to the house and that Mr. Vecchia be responsible for payment of the equity line of credit.
Mr. Vecchia participates in the City of Stamford's retirement and pension plan and has a mandatory deduction from his pay in the amount of $85.13 per week. He will not be vested in the pension plan until September 2002 and cannot begin receiving benefits until he turns 60 on December 30, 2006. The current amount accumulated in the plan is $38,264. If Mr. Vecchia works until he is vested in the plan, he will be entitled to a lifetime monthly benefit of $1,454 at age 60. Assuming that Mr. Vecchia becomes vested in the plan, the lump sum actuarial value of his future benefit is $194,450. Reduced to present value, the current actuarial value of that benefit is $145,250. Obviously, there is a risk that Mr. Vecchia will not remain as an employee of the City until his pension is vested. Mr. Vecchia is presently on paid administrative suspension from his job as a result of his arrest for stalking. He is a member of a union which is presently in the process of negotiating a new contract with the City. Trying to account for the risk that the pension will not vest complicates the task of trying to allocate the marital assets in an equitable way. But, in light of all the relevant factors it is fair that Mr. Vecchia retain title to the pension subject to the risk that the pension will not vest.
Ms. Vecchia has an IRA at Fidelity with a present value of $29,700. Mr. Vecchia has IRAs with First Union with a value of $10,643, and with Fidelity with a value of $130,670. The claim that Mr. Vecchia withdrew $10,427 from his First Union IRA in violation of the automatic orders was not proven by a preponderance of the evidence. Mr. Vecchia has an ICMA retirement account from a previous employer with a present value of $20,909. Mr. Vecchia holds stock with a value of $5,380.
The pendente lite orders required Mr. Vecchia to pay 71.8% of the unreimbursed medical and dental expenses. Ms. Vecchia has paid her share CT Page 11900 of these expenses and has paid $1,407.28 toward expenses owed by Mr. Vecchia.
It is ordered that:
1. The marriage of the parties is dissolved.
2. Child custody, access, and health insurance are ordered in accordance with the written stipulation of the parties approved by the court on July 16, 2001 and which is incorporated by reference into the decree.
3. Mr. Vecchia shall pay to Ms. Vecchia child support, by immediate wage withholding, in the amount of $317 per week, which sum is in accordance with the Child Support Guidelines. This calculation of child support was made without a deduction for Mr. Vecchia's mandatory retirement plan. Section 46b-215a-1(B) of the Guidelines permits a deduction from gross income for "social security taxes or in lieu thereof, mandatory retirement plan deductions . . ." (emphasis added). Mr. Vecchia is not entitled to a deduction for social security taxes and mandatory retirement payments. Mr. Vecchia's obligation for support of the minor children shall terminate when each child attains the age of 18 years but if still in high school, support shall continue through high school graduation but not beyond the age of 19 years.
4. Mr. Vecchia shall pay to Ms. Vecchia, during his lifetime, the weekly sum of $250 as periodic alimony, which payment shall terminate upon the first to occur of the following events:
a. The death of either party;
b. The remarriage of Ms. Vecchia;
c. Cohabitation by Ms. Vecchia as provided by statute;
d. 10 years from the entry of this judgment.
Alimony shall be paid by immediate wage withholding order.
5. Ms. Vecchia shall retain the marital residence located at 600 Redding Road, West Redding, Ct., as her sole and exclusive property. Mr. Vecchia shall transfer his interest in the property to Ms. Vecchia by delivery of a Quit Claim Deed in recordable form within ten (10) days of entry of the final judgment. From delivery of the Quit Claim Deed to Ms. Vecchia, Ms. Vecchia shall pay the current first mortgage, real estate taxes, and homeowners insurance and shall indemnify and hold Mr. Vecchia harmless from the same. Mr. Vecchia shall pay and be solely liable for the Home CT Page 11901 Equity Line, and payment in full on this loan shall be made by Mr. Vecchia no later than two years from the date of this judgment. Mr. Vecchia shall furnish Ms. Vecchia with a fully executed copy of the Release of Mortgage or Release of Lien. Mr. Vecchia shall not encumber the marital residence or draw upon the Home Equity loan.
6. Mr. Vecchia shall retain his retirement and pension account with the City of Stamford, his Fidelity IRA, and his First-Union IRA, free and clear of any claims of Ms. Vecchia. Mr. Vecchia shall transfer to Ms. Vecchia his ICMA retirement account by way of tax free rollover or qualified domestic relations order as required by the plan administrator. Both parties are ordered to sign any documents necessary to make this transfer. The court will retain jurisdiction until such time as the qualified domestic relations order has been approved.
7. Mr. Vecchia shall be the sole owner of the stock in Lucent, Bell Verizon, and ATT, free and clear of any claims of Ms. Vecchia.
8. The parties shall retain the personal property, including automobiles, presently in their possession, free and clear of the claims of the other.
9. The parties shall pay the debts shown on their financial affidavits and shall indemnify and hold the other harmless from liability for the same.
10. Mr. Vecchia shall be entitled to take the younger child as a dependency exemption as long as he is entitled to do so as a matter of federal law and as long as he is current in his child support. Ms. Vecchia shall be entitled to take the older child as a dependency exemption as long as she is entitled to do so under federal law.
11. In accordance with the stipulation of the parties approved by the court on July 16, 2001, the parties shall continue to share equally the fees of the Guardian Ad Litem, Attorney Dale Galbo. The total fees of $17,610.56 are found to be fair and reasonable. Ms. Vecchia has paid $1,877.33. Therefore, she owes $6,927.95 which she is ordered to pay within 60 days or in accordance with any payment schedule which is agreeable to Attorney Galbo. Mr. Vecchia has paid $500. Therefore he owes $8,305.28 which he is ordered to pay within 60 days or in accordance with any payment schedule which is agreeable to Attorney Galbo.
12. Mr. Vecchia shall pay Ms. Vecchia's premium costs for the continuation of medical and dental insurance (COBRA) for a period of three months at most. This obligation shall terminate sooner if Ms. Vecchia's medical and dental insurance through her employment become CT Page 11902 effective.
13. The fees and costs of the attorney for the minor child, Sharon Wicks Dornfeld, in the total amount of $18,310.56, are found to be fair and reasonable. Ms. Vecchia has paid $1,877.33. Therefore she owes $7,277.95 which she is ordered to pay within 60 days or in accordance with any payment plan which is acceptable to Attorney Dornfeld. Mr. Vecchia has paid $500. Therefore, he owes $8,655.28 which he is ordered to pay within 60 days or in accordance with any payment plan which is acceptable to Attorney Dornfeld.
14. Mr. Vecchia shall continue to maintain his existing life insurance (1 and 1/2 times his salary) through his employment for the benefit of the minor children so long as they are minors and not emancipated. This insurance is already in existence and is affordable. The evidence was insufficient to prove that additional insurance would be available or affordable.
15. Within 30 days Mr. Vecchia is ordered to pay to Ms. Vecchia the sum of $1,407.28 and to pay any balances due the health care providers on the date of this judgment after health insurance has paid its maximum benefit.
16. Ms. Vecchia shall be the sole owner of the balances in her accounts at Nutmeg Federal Savings Bank and Newtown Savings Bank, free and clear of any claims of Mr. Vecchia. Mr. Vecchia shall be the sole owner of the balances in his accounts at Savings Bank of Danbury, First Union Checking, and his credit union checking, free and clear of any claims of Ms. Vecchia.
17. Each party shall pay his or her own counsel fees.
BY THE COURT,
JOHN W. PICKARD, JUDGE